## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF CALLAIS & SONS, LLC, AS THE OWNER OF THE M/V JIMMY P LAFONT, PETITIONING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY

CIVIL ACTION

NO.  20-293

SECTION: "E" (3)

## ORDER AND REASONS

Before the Court is a Motion in Limine filed by Limitation Petitioner Callais & Sons, LLC, which seeks to exclude "evidence and testimony of speculative earnings."[1] Claimant Michael Triplett opposes.[2]

Claimant seeks to present an expert report for past and future wage loss which relies on the assumption that he would have received not one but two promotions in the two years following his injury.[3] Contending that the presumption of promotions and associated higher earnings is "speculative," Callais seeks to exclude the report and all testimony regarding the promotions and prevent the expert from amending his report.[4]

Mr. Triplett retorts that "there is ample evidence in the record to support Dr. Rice's assumption that plaintiff's earnings would have increased over time."[5] As such, they contend that "the fact finder should be able to receive and weigh the evidence" regarding the possibility of promotion "and make their future lost wage computation accordingly."[6]

### I. Calculation of Lost Wages Begins with Gross Earnings at the Time of the Injury.

In maritime injury cases in the Fifth Circuit, "calculation of the lost income stream

---

[1] R. Doc. 30.
[2] R. Doc. 31.
[3] R. Doc. 30-2 at 2.
[4] R. Doc. 30 at 18.
[5] R. Doc. 31 at 1.
[6] Id. at 14.

begins with the gross earnings of the injured party at the time of injury."[7] "The paramount concern of a court awarding damages for lost future earnings is to provide the victim with a sum of money that will, in fact, replace the money that he would have earned."[8] Thus, a proper calculation of lost wages must be based on what the injured party was making at the time of the injury rather than, for example, an average based on several years of earnings.[9] In this case, it is undisputed that Mr. Triplett was earning $200.00 per day at the time of his injury.[10] This was the base rate of pay for all starting deckhands with Callais & Sons.[11] Therefore, any calculation of lost wages for Mr. Triplett must begin at this rate.

## II. Evidence of Future Raises or Decreases in Earnings is Permissible so Long as it is not "Speculative."

This motion, however, is not concerned with where the calculation of Mr. Triplett's lost wages begins but with where it ends. In calculating Mr. Triplett's lost wages, his expert, G. Randolph Rice, assumes that Mr. Triplett would have been promoted to "Lead Deckhand" approximately one year after his hire date of June 6, 2019 and that he would have been promoted further to "Tankerman" one year thereafter (namely, June 7, 2021).[12] The Court is tasked with ensuring that expert testimony "is both reliable and relevant."[13] The burden of proving admissibility rests with the party offering the testimony.[14] With this motion, Callais challenges the assumptions which underlay Dr. Rice's report. Mr. Triplett therefore has the burden to show that this testimony is admissible.

---

[7] *Culver v. Slater Boat Co.*, 722 F.2d 114, 117 (5th Cir. 1983) (*en banc*).

[8] *Id.* at 120.

[9] *See, e.g.*, *Martinez v. Offshore Specialty Fabricators, Inc.*, 481 Fed. Appx. 942, 949 (5th Cir. 2012) ("[Defendant] argues that we should vary the calculation method in Culver by beginning with an average of [Plaintiff]'s earnings over several years, but the cases it cites in support of its argument do not provide authority for calculating lost wages in this manner.").

[10] R. Doc. 30-3 at 21.

[11] *Id.*

[12] R. Doc. 30-2 at 2.

[13] *Burleson v. Tex. Dep't of Crim. Justice*, 393 F.3d 577, 584 (5th Cir. 2004) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993)).

[14] *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

While *Culver* establishes that calculation of lost wages must begin with earnings at the time of the injury, "[e]vidence about the likelihood that the earnings of an injured worker would increase due to personal merit, increased experience and other individual and societal factors continue, of course, to be admissible."[15] Likewise, the Fifth Circuit has held that evidence concerning future declines in earnings as a result of societal factors such as prevailing economic conditions are admissible.[16] As Callais correctly notes, the standard for whether such evidence can come in is whether the factors in play are "so speculative that they cannot accurately be determined."[17]

### III.    There is Non-Speculative Evidence of a Potential Future Raise.

Callais asserts that the evidence offered in this case is akin to that excluded in this district in *Lewis v. Seacor Marine, Inc.*[18] In that case, Judge Engelhardt excluded as speculative expert testimony as to wage loss that assumed that an injured deckhand would have reached the rank of captain in time and worked at a captain's salary for the remainder of his working life.[19] The only evidence of a future promotion to captain consisted of the Plaintiff's contention that he had "attended SEACOR University and enjoyed his work as a deckhand the entire month preceding the accident at issue."[20] The record was otherwise stacked against him: "There is no suggestion or innuendo that the injured plaintiff … took any concrete steps on the difficult road to becoming a captain, nor that he even descended from a long line of seafaring captains and harbored dreams of attaining that position as a youth."[21]  In this case, Callais claims, Mr. Triplett has likewise

---

[15] *Culver*, 722 F.2d at 122.
[16] *See, e.g.*, *Masinter v. Tenneco Oil Co.*, 929 F.2d 191, 194 (5th Cir. 1991) ("evidence concerning the economic conditions in the oil industry is relevant to determine to what extent an injured person will suffer future losses.").
[17] *Culver*, 722 F.2d at 120.
[18] 2002 U.S. Dist. LEXIS 29401 (E.D. La. 2002)
[19] *Id.* at *2.
[20] *Id.*
[21] *Id.* at *2-3.

no evidence beyond "hopes or future plans" to support the assumption that he would have risen up the ranks and become a lead deckhand and a tankerman in time.[22]

It is undisputed that Mr. Triplett had only completed a single hitch as a deckhand prior to his injury, and the record reflects that he had minimal, if any, work experience in any industry prior to beginning with Callais.[23] Taken alone, this evidence suggests that Mr. Triplett would not have risen up the ranks. However, Mr. Triplett provides other viable evidence to supports his claim. First, he notes that Jimmy Lafont, a manager for Callais, said of Mr. Triplett: "I had a lot of faith in Mr. Triplett, I really do. Good deckhand, what I heard."[24] Mr. Lafont also stated that deckhands could be promoted after even "one hitch" and that all that is needed to rise to the level of lead deckhand is for the captain to say "I got a good man."[25] Finally, Mr. Lafont stated that Mr. Triplett would likely have reached the level of tankerman, "[p]robably – probably quick."[26] Likewise, Captain John Joseph, who was the captain during Mr. Triplett's first hitch and was on duty at the time of Mr. Triplett's injury, opined that Mr. Triplett could have become a tankerman had he not been injured.[27] Neither of these testimonies deal in certainty. But "certainty of proof

---

[22] R. Doc. 30-1 at 15.

[23] *Id.* at 14.

[24] R. Doc. 31-1 at 7.

[25] R. Doc. 30-3 at 21.

[26] R. Doc. 31-1 at 8.

[27] R. Doc. 31-2 at 7. Mr. Triplett also suggests that Charlie Wilson, a tankerman who trained Mr. Triplett, "is also of the opinion that had Michael Triplett not gotten injured, he would have eventually become a tankerman." R. Doc. 31 at 4 (emphasis removed). However, the record reflects that Mr. Wilson actually stated that the injury occurred too soon for Mr. Wilson to say whether or not Mr. Triplett would have become a tankerman. R. Doc. 30-5 at 14. The exchange reads, in relevant part:

> Q. And I know Michael was [a] good guy and you think maybe, eventually maybe he could become a tankerman, right?
> A. Maybe. Maybe he could but.
> Q. But there's just no way to tell after working for two or three weeks?
> A. No, not after two or three weeks, no.
> ...
> Q. He needed to move up the deckhand ranks first, right?
> A. You gotta learn that first, right.

*Id.*

is not required in civil cases, probability is."[28] The record demonstrates enough evidence that the fact finder in this case could find that Mr. Triplett would have risen up to become a lead deckhand and, eventually, a tankerman. Therefore the Court will not grant this motion; both sides are free to present to the jury their case as to Mr. Triplett's prospects at the time of his injury.

## **CONCLUSION**

**IT IS ORDERED** that Petitioner's Motion in Limine to exclude evidence of speculative earnings be and hereby is **DENIED**.[29]

**New Orleans, Louisiana, this 29th day of March, 2022.**

_Susie Morgan_

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[28] *Lewis*, 2002 U.S. Dist. LEXIS 29401 at *6.
[29] R. Doc. 30.